UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CNH CAPITAL AMERICA, LLC,

Plaintiff,

v.                    608CV027

SOUTHEASTERN AGGREGATE, INC.,
and CLEONE B. BROWN,

Defendants,

v.

ATLANTIC COASTAL EQUIPMENT, LLC,

Third-Party Defendant.

## ORDER

## I.    INTRODUCTION

In this breach of contract case, plaintiff CNH Capital America, LLC ("CNH") sued defendants Southeastern Aggregate, Inc. and its guarantor Cleone Brown (collectively "SAI") for breach of two security contracts. Doc. # 1. SAI answered and filed a counterclaim against plaintiff CNH, doc. ## 9, 10, 29, 30, and a third-party claim against Atlantic Coastal Equipment, LLC ("ACE"), doc. # 32.

ACE now moves, pursuant to F.R.Civ.P. 12(b)(6) and 14(a)(4), to dismiss or to strike the third-party claim against it. Doc. # 42. In the alternative, ACE moves to dismiss Counts Four and Five (federal and state RICO claims) of the third-party complaint pursuant to Rule 12(b)(6). Doc. # 43.

## II.    BACKGROUND

This litigation traces back to SAI's purchase of two pieces of equipment from ACE. Doc. # 29 at 1-4. On 8/4/06 and 9/4/06, ACE delivered to SAI two wheel loaders ("Loader 1" on 8/4/06, and "Loader 2" on 9/6/06). Id. Upon delivery of each loader, SAI and ACE allegedly entered into a Retail Installment Security Contract, wherein SAI granted ACE a security interest in each of the loaders along with a personal guaranty.[1] Id. Immediately after each contract was made, ACE assigned its security interest in the loader to CNH. Id. at 4.

On 4/18/08, CNH brought this action, alleging that SAI had defaulted on the two contracts (and that Brown had defaulted in the terms of the guaranty) by failing to make any payments since 9/15/07. Doc. # 1 at 5. As a result, CNH alleges that SAI was $34,985.76 past due. Id. Following acceleration of the outstanding payments due (pursuant to the contracts' terms), CNH alleges a "total aggregate outstanding balance of principal and interest" (as of 3/20/08) of $263,002.05, with interest accruing at a rate of $51.24 per day. Id. at 5-6.

SAI, however, claims that an ACE employee forged Salter and Brown's signatures on the two security contracts, and that some of the price and payment terms on the contracts were incorrect. Doc. # 32 at 3-5. SAI also claims that, during the delivery of Loader 1, ACE's employee misrepresented to Brown that the document she was signing was simply an acknowledgment of ACE's delivery of the loader, when in actuality she was signing the security agreement contract. Id. at 2.

---

[1]  Both security contracts were originally guaranteed by W.L. Salter, but at some point, the parties agreed to replace Salter with Cleone Brown as the new guarantor. Doc. # 1 at 4. Additionally, when each loader was delivered, Brown represented SAI and signed the contracts on its behalf. Doc. # 29 at 2.

Based on these contentions, SAI answered the complaint, alleging, *inter alia*, that CNH and ACE "defrauded [SAI] in the execution of any agreements between the parties," that "any agreement between [CNH] and [SAI] was rescinded on 10/24/07," and that "any agreement between [CNH] and [SAI] was the result of a mistaken fact and should not be enforced." Doc. # 9 at 1. Along with its answer to CNH's complaint, SAI filed a counterclaim against CNH, alleging fraud (based on the allegation that CNH misrepresented to SAI that it held a valid security contract with correct payment terms) and conspiracy (based on the allegation that CNH and ACE acted together to defraud SAI and gain access to its funds). Doc. # 29 at 5-6. As a result, SAI requests, *inter alia*, that the Court declare the security contracts void, and that CNH be held liable for fraud "with damages in an amount to be determined by the reasonable conscience of the jury." *Id.* at 10.[2]

SAI has additionally – with leave of Court – filed a third-party complaint against ACE, alleging: (1) fraud based on ACE's misrepresentation to SAI that the security agreement was a delivery acknowledgement, (2) fraud based on ACE's forgery of Salter's signature on the security agreement for Loader 1, (3) fraud based on ACE's forgery of Salter's signature and Brown's initials on the security agreement for Loader 2, (4) violation of the federal RICO statute (based on the forgery and subsequent assignment-for-value of the security agreements), (5) violation of the state RICO statute (based on

the forgery), and (6) conspiracy (by acting in concert with CNH to defraud SAI and gain access to its funds). Doc. # 32.

Before the Court is ACE's motion to dismiss, or in the alternative to strike, SAI's third-party complaint "for failure to state a claim on which relief can be granted and for failure to satisfy the requirements of F.R.Civ.P. 14(a)." Doc. ## 42, 43. Additionally, ACE argues that if the Court does not dismiss the third-party complaint in its entirety on the above-stated grounds, it should dismiss the federal and state RICO claims for failure to state a claim upon which relief can be granted, pursuant to F.R.Civ.P. 12(b)(6). Doc. # 43 at 1.

## III.  ANALYSIS

### A. Rule 14

Federal Rule of Civil Procedure 14, which governs third-party practice (also referred to as "impleader"), provides, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." F.R.Civ.P. 14(a)(1). Thus, to satisfy Rule 14, the third-party defendant "must be liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff." *U.S. v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967).[3]

In *U.S. v. Olavarrieta*, the Eleventh Circuit elaborated on this requirement:

> Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way *dependent upon the outcome of the main claim*. Rule 14(a) does not allow the defendant to

---

[2] In several parts of its amended counterclaim, SAI makes allegations against ACE and even requests specific relief from ACE (i.e., "That *ACE* and Plaintiff be found jointly and severally liable to Defendants."). Doc. # 29 at 8 (emphasis added). However, SAI never moved the Court to add ACE as a co-defendant to the counterclaim.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to 10/1/81.

assert a separate and independent claim *even though the claim arises out of the same general set of facts as the main claim.*

812 F.2d 640, 643 (11th Cir. 1987), *cert. denied*, 484 U.S. 851 (1987) (emphasis added). *See also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978) (The third-party complaint must "depend[] at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but *logical dependence*.") (citation omitted) (emphasis added).

Here, SAI's allegations that ACE defrauded SAI during the creation of the contracts in no way "depend upon" the outcome of CNH's claim that SAI breached these contracts by prematurely ceasing its payments; whether SAI is entitled to any relief from ACE on the fraud claims is not *dependent upon* whether SAI is liable to CNH for breach of contact.[4] That is, if ACE did defraud SAI as alleged in the third-party complaint, ACE is liable to SAI *now* for damages, regardless of the outcome of the main claim.

The Court acknowledges that the original and third-party claims are somewhat intertwined here, and that in the event that SAI is held liable for breaching the contracts, SAI could likely seek consequential damages (in addition to the purely fraud-based damages already sought) from ACE if SAI can prove that ACE defrauded SAI in the making of the contracts. *See Leasetec Corp. v. Inhabitants of the County of Cumberland*, 896 F. Supp.

---

[4] The Court recognizes that "fraud" is not the only claim raised in the third-party complaint. Nonetheless, the other claims within the third-party complaint (particularly, RICO and conspiracy) are based upon the allegations of fraud, and much of the Court's discussion therefore will reference only the fraud.

35, 40 (D. Me. 1995) (finding that although "it may be that the County seeks to include its liability on the rental contract [(the main claim)] as an element of damages in its contract claims" against the proposed third-party defendant, nonetheless, "the question of [the proposed third-party defendant's] liability is not tied to the outcome of the original claim by Leasetec"). Nonetheless, notwithstanding the fact that the claims asserted in the original complaint and the third-party complaint could be considered "inextricably intertwined," Rule 14(a) remains unsatisfied. *See Uldricks v. Kapaa 382*, 2007 WL 2694409, at *3 (D. Hawaii 9/11/07) ("The fact that the claims asserted in the Complaint and Third-Party Complaint are ... 'inextricably intertwined,' does not satisfy the standard for third-party practice under Rule 14. It is not sufficient that the claims asserted in the Third-Party Complaint merely arise from the same transaction or occurrence as the underlying suit.").

Even the fact that ACE's conduct might be relevant to SAI's defenses or its counterclaims against CNH does not satisfy the third-party complaint requirements. *See id.* at *1 (Where the defendant's third-party claims were merely "based on the precise conduct that supports an affirmative defense to liability or possible counterclaim against [the original plaintiff]," the court dismissed the third-party complaint as impermissible under Rule 14(a), stating that Rule 14 "is narrower, requiring an attempt to pass on to the third party all or part of the liability asserted against the defendant."). The fact that ACE's conduct may be at issue during litigation of the main claim is not – on its own – a sufficient basis for making it a third-party defendant. There are other methods for presenting and proving that conduct. *See, e.g., Timmons v. Ford Motor Co.*, 949 F. Supp. 859, 862, 862 n.7 (S.D. Ga. 1996) ("Although Defendant must bear a substantial burden at trial, introducing [the

3

proposed third-party defendant] into this case is not the only way for [Defendant] to satisfy that burden. (Footnote 7: Either party in this action could, theoretically, subpoena [the proposed third-party defendant] as a witness.)").

In fact, a successful coordination of SAI's claims against CNH and ACE requires a sort of reversal of Rule 14(a)'s logic: if ACE were allowed into this case, SAI would need to *first* seek to prove its fraud claims against ACE (to show that the contract is void), so that it could *then* argue that it therefore could not be held liable to CNH for breaching that contract. From this logic it appears that ACE would be more correctly defined as a co-defendant on the counterclaim.

Thus, the Court concludes that SAI's pleading against ACE does not qualify as a third-party complaint under Rule 14(a), as ACE's liability is not derivative of SAI's liability to CNH on the contracts it has allegedly breached.

SAI's conspiracy claim against ACE is salvageable, however, though via a different classification. Pursuant to Rule 13(h), "persons other than those made parties to the original action may be made parties to a counterclaim ... in accordance with the provisions of Rules 19 and 20." F.R.Civ.P. 13(h). Rule 13(h), however, has been interpreted as only authorizing courts to join additional persons in order to adjudicate a counterclaim that is already before the court or one that is being asserted against an existing party at the same time the addition of the non-party is sought. 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1435, at 270-71 (2d ed. 1990). "This means that a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the

original action, but must involve at least one existing party." *Id.*

In both its counterclaim and its attempted third-party complaint, SAI alleges that CNH and ACE conspired against it. As SAI had already asserted its conspiracy counterclaim against CNH when it filed its pleading against ACE (attempting to make ACE a party), SAI meets the Rule 13(h) requirement for joining SAI to this action as a co-defendant to the conspiracy counterclaim. One hurdle remains, however: as the original action is grounded in diversity jurisdiction, and as ACE and SAI are citizens of the same state, the addition of ACE as a counter-defendant could potentially destroy diversity of citizenship and oust this Court of jurisdiction over the counterclaim. Only if the counterclaim is deemed compulsory under Rule 19 will the Court retain jurisdiction despite the lack of diversity. *H.L. Peterson Co. v. Applewhite*, 383 F.2d 430, 433 (5th Cir. 1967) ("It is well-settled that where ... the counterclaim is compulsory ..., no independent jurisdictional ground need exist where an additional party ... is brought into the case by the counterclaimant.").

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." F.R.Civ.P. 13(h). A claim arises out of the same transaction or occurrence if there is a "logical relationship" between the claims. *Republic Health Corp. v. Lifemark Hosps. of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Here, CNH's breach of contract action against SAI and SAI's conspiracy counterclaim against CNH are both based upon the execution and enforcement of the same two contracts. As a result of the logical interdependence of the claims, the Court finds that the conspiracy counterclaim is compulsory, and ACE's presence in this action as a co-defendant on

the counterclaim does not divest this Court of jurisdiction.

Finally, the Court acknowledges that no party has moved the Court to join ACE as a co-defendant in counterclaim. The Court does so *sua sponte*, however, pursuant to Rule 19(a)(2), which provides that "if a person has not been joined as required, the court must order that the person be made a party." F.R.Civ.P. 19(a)(2). According to Eleventh Circuit precedent, a joint tortfeasor will be considered a necessary party pursuant to Rule 19 if that party "'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation." *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999).

Here, ACE was clearly an active participant in the alleged conspiracy to "wrongfully gain access to funds of SAI and Brown": ACE alone transacted with SAI, creating and executing the contracts upon which the conspiracy is based; and ACE alone allegedly committed the primary fraudulent acts (misrepresentation and forgery). ACE then sold those contracts to CNH. Without ACE, CNH would not have been collecting payments from SAI on the contracts at issue and would not now be subject to allegations that its collection of those payments was somehow fraudulent. Thus, SAI's conspiracy claim necessarily requires that the Court evaluate ACE's conduct in relation to SAI, "thereby substantially implicating [ACE's] interests." *Id.* at 848. As a result, the Court finds that ACE is necessary to the litigation of the conspiracy counterclaim, and the Court must *sua sponte* order its joinder as a co-defendant to the claim.

None of SAI's other five claims against ACE has additionally been asserted as a counterclaim against CNH. As a result,

those claims cannot be asserted in the present action. Accordingly, ACE's Motion to Dismiss or in the Alternative to Strike is granted as to those five claims and they are dismissed without prejudice. In reaching this conclusion, the Court does not address the other grounds for dismissal asserted by ACE (namely that SAI's Rule 12(b)(6) motion as to the state and federal RICO claims). ACE is free to assert those defenses in the event that SAI chooses to pursue a separate action against ACE.

III. **CONCLUSION**

For the foregoing reasons, ACE's Motion to Dismiss or in the Alternative to Strike the third-party complaint against it is *GRANTED* in part and *DENIED* in part. Doc. #42. The Court *DENIES* ACE's motion to dismiss or strike SAI's conspiracy claim against it, and instead joins ACE in this action as a co-defendant to SAI's conspiracy counterclaim. *Id.* The Court *GRANTS* ACE's motion to dismiss SAI's remaining claims against ACE (the three fraud claims and the federal and state RICO claims), doc. # 32, which are *DISMISSED WITHOUT PREJUDICE*. Finally, in light of the recharacterization of SAI's conspiracy claim against ACE, CNH's complaint against ACE (entitled "Complaint Against Third-Party Defendant"), which contains allegations arising out of the same transaction as the original claims and counterclaims, should be recharacterized as a crossclaim against co-counter-defendant ACE. Doc. # 37.

This day of 18 June 2009.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA