UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CNH CAPITAL AMERICA, LLC,

Plaintiff,

v.                           608CV027

SOUTHEASTERN AGGREGATE, INC., and CLEONE B. BROWN,

Defendants,

v.

ATLANTIC COASTAL EQUIPMENT, LLC,

Third-Party Defendant.

ORDER

I. INTRODUCTION

In this breach of contract case, plaintiff CNH Capital America, LLC ("CNH") sued Southeastern Aggregate, Inc. and its guarantor Cleone Brown for breach of two security contracts. Doc. # 1. SAI and Brown answered and filed identical counterclaims against plaintiff CNH, alleging fraud and conspiracy. Doc. ## 9, 10, 29, 30. SAI and Brown later filed a third-party complaint against Atlantic Coastal Equipment, LLC ("ACE"), alleging three counts of fraud, conspiracy, and federal and state RICO violations. Doc. # 32. After dismissing all of SAI and Brown's claims against ACE save for the conspiracy claim, the Court recharacterized ACE as a co-defendant (with CNH) to the conspiracy counterclaim. Doc. # 73. Additionally, CNH filed a cross-claim against its co-counter-defendant ACE, alleging breach of warranty, and requesting indemnity and attorney's fees. Doc. # 37.

Presently before the Court are various motions for summary judgment filed by both ACE and CNH, doc. ## 81, 84, 86, as well as a motion by CNH for a default judgment against in-default defendant SAI, doc. # 98.

II. BACKGROUND

This litigation traces back to SAI's purchase of excavation equipment from ACE. The facts, as stipulated by the parties in an attachment to their joint consolidated pre-trial order, doc. # 80-2, are as follows. On 8/4/06 and 9/4/06, ACE delivered to SAI two wheel loaders ("Loader 1" on 8/4/06, and "Loader 2" on 9/4/06). *Id.* at 2-4. Upon delivery of each loader, SAI and ACE entered into a Retail Installment Security Contract (hereinafter, "contract" or "contracts"), wherein SAI granted ACE a security interest in each of the loaders. *Id.* At the time of each delivery, Brown, as vice-president of SAI, executed various documents on SAI's behalf. *Id.* at 2-6. The signature appearing above the "Buyer/Buyer's Representative" line on the contract for Loader 1 reads "Cleone B. Brown," and appears to be her valid signature. *Id.* at 2. Brown, however, maintains that she does not recall signing this document. *Id.* Likewise, the signature for the "Buyer/Buyer's Representative" line on the contract for Loader 2 reads "Cleone B. Brown."[1] *Id.* at 5. Both contracts were originally guaranteed by an individual named W.L. Salter, whose signature was on each contract.[2] *Id.* at 4, 6. Immediately after each contract was executed, ACE assigned its security interest in the loaders to CNH. *Id.* CNH gave ACE consideration in the amounts of $147,642.41 for Loader 1 and $138,083.34 for Loader 2. *Id.*

---

[1] Brown, however, makes no claim as to whether she remembers signing this agreement.

[2] The authenticity of Salter's signatures, however, is among the disputed issues in the case.

Several months later, at the request of SAI and Brown, the two contracts were each amended so that W.L. Salter could be replaced by Brown as guarantor. *Id.* at 7. Then, in late April 2007, Brown contacted CNH on behalf of SAI and requested a change in the payment schedule as to each contract. *Id.* at 8. In response, CNH prepared a "Payment Schedule Change Agreement" for each contract. *Id.* In September 2007, again upon Brown's request, CNH prepared a second Payment Schedule Change Agreement as to the contract for Loader 2. *Id.*

On 4/18/08, CNH brought this action, alleging that SAI had defaulted on the two contracts (and that Brown had defaulted in her role as guarantor) by failing to make any payments after 9/15/07. Doc. # 1 at 5. As a result, CNH alleged that SAI was $34,985.76 past due on the two contracts. *Id.* Following acceleration of the outstanding payments due (pursuant to the contracts' terms), CNH alleged a "total aggregate outstanding balance of principal and interest" (as of 3/20/08) of $263,002.05, with interest accruing at a rate of $51.24 per day. *Id.* at 5-6.

SAI and Brown, however, claim that Brian Deal, an ACE employee, forged Salter and Brown's signatures on the two security contracts, and that some of the price and payment terms on the contracts were incorrect. Doc. # 32 at 3-5. SAI and Brown also claim that, during the delivery of Loader 1, Deal misrepresented to Brown that the document she was signing was simply an acknowledgment of ACE's delivery of the loader, when in actuality she was signing the security agreement. *Id.* at 2.

Based on these contentions, SAI and Brown answered the complaint, alleging, *inter alia*, that CNH and ACE "defrauded [them] in the execution of any agreements between the parties," that "any agreement between [CNH] and [SAI] was rescinded on 10/24/07," and that "any agreement between [CNH] and [SAI] was the result of a mistaken fact and should not be enforced." Doc. ## 9 at 1; 10 at 1. Along with their answers to CNH's complaint, SAI and Brown each filed a counterclaim against CNH, alleging fraud (based on the allegation that CNH misrepresented to SAI and Brown that it held a valid contract with correct payment terms) and conspiracy (based on the allegation that CNH and ACE acted together to defraud SAI and Brown to gain access to SAI's funds). Doc. ## 29 at 5-6; 30 at 5-6. As a result, SAI and Brown request, *inter alia*, that the Court declare the contracts void and that CNH be held liable for fraud "with damages in an amount to be determined by the reasonable conscience of the jury." Doc. ## 9 at 10; 10 at 10.

SAI and Brown additionally filed what they styled as a "third-party complaint" against ACE, alleging: (1) fraud based on ACE's misrepresentation to SAI that the security agreement was a delivery acknowledgement, (2) fraud based on ACE's forgery of Salter's signature on the security agreement for Loader 1, (3) fraud based on ACE's forgery of Salter's signature and Brown's initials on the security agreement for Loader 2, (4) violation of the federal RICO statute (based on the forgery and subsequent assignment-for-value of the security agreements), (5) violation of the state RICO statute (based on the forgery), and (6) conspiracy (by acting in concert with CNH to defraud SAI and gain access to its funds). Doc. # 32. The Court ultimately dismissed all of SAI and Brown's claims against ACE, save for the conspiracy claim, which was reconstrued as part of SAI and Brown's conspiracy counterclaim against CNH. Doc. # 68. As a result, ACE was joined in this action as a co-defendant (with CNH) to the conspiracy counterclaim. *Id.* at 5.

2

CNH also filed its own complaint against co-counter-defendant ACE, for breach of the assignment agreement warranties and for indemnification and attorney's fees. Doc. # 37. CNH claims that, pursuant to the terms of the assignment agreement and under the specific circumstances at issue here, ACE is required (but refuses) to repurchase the contracts from CNH and to assume the defense of SAI and Brown's claims, holding CNH harmless. *Id.*

In the meantime, on 4/23/09, the Court granted a motion by counsel for SAI and Brown for leave to withdraw from his representation. Doc. # 61. A month later, counsel for CNH and ACE called to the Court's attention the fact that SAI had not yet secured replacement counsel. See doc. # 62 at 2 n.1. CNH and ACE expressed concern that, since SAI was a corporation and therefore could not proceed *pro se*, the parties' upcoming status conference may be hampered by SAI's lack of representation.[3] *Id.* at 1-2. The Court ordered SAI to find replacement counsel within ten days. Doc. # 62. When it failed to do so, the Court dismissed without prejudice all claims asserted by SAI and additionally directed that SAI be entered into default with regards to all claims against it. Doc. # 73 at 3. All claims by and against Cleone Brown, as well as CNH's cross-claim against ACE, however, remain pending. *Id.*

The remaining parties conducted a pretrial conference and filed a Joint Consolidated Pretrial Order.[4] Doc. # 80. Within days of filing their Joint Consolidated Pretrial Order, CNH and ACE filed three summary judgment motions and a motion for default. Doc. ## 81, 84, 86, 98. The Court will address each in turn.

### III. ANALYSIS

#### A. Default Judgment

CNH requests that the Court enter a default judgment against SAI. Doc. # 98. Under F.R.Civ.P. 55(b)(2), the Court has the discretion to enter a judgment by default so long as: (1) it has previously entered default against the defendant; (2) it has personal jurisdiction over the defendant and subject-matter jurisdiction over the case; and (3) the complaint makes allegations for which the law can afford relief. *Patray v. Northwest Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996). Furthermore, where the defendant has made an appearance, he must be served with notice of the motion for default judgment at least 3 days prior to the judgment's entry. F.R.Civ.P. 55(b)(2).

The Clerk entered SAI into default on 8/5/09, doc. # 74, upon this Court's Order, doc. # 73. CNH has served a copy of its default-judgment motion upon SAI. Doc. # 98 at 5, 7. SAI is a Georgia corporation and has been served through its registered agent, Lester Brown. Doc. # 1 at 1-2. Plaintiff

---

[3] Brown, however, as an individual, could proceed *pro se*.

[4] The Court notes that the parties' Pretrial Order includes three different versions of the parties' "Joint Stipulations of Fact." Doc. # 80-2. In an affidavit, counsel for CNH explains that, although Brown agreed to an exhaustive list of 72 stipulations of fact, she later (after conferring with her husband during a break) changed her mind and decided to only assent to a more limited set of facts. Doc. # 86-4 at 13-17. As a result of this divergence, the parties have submitted various documents to reflect what was agreed-upon by the parties at various stages of the stipulation process: "Attachment A" is a clean, final copy of the narrowest set of stipulated facts, which was prepared after Brown changed her mind, and which was signed by all three parties; "Attachment A-1" is a clean copy of the broader set of facts, which includes those facts that Brown originally agreed to before meeting with her husband and reconsidering; and, "Attachment A-2" is the "draft" version of A-1, which shows Brown's initials next to many of the facts to which she later refused to stipulate. Doc. # 80-2 at 1-37.

3

CNH is incorporated in Delaware. *Id.* at 1. As CNH asserts a claim in excess of $75,000, the Court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332. The Court thus has personal jurisdiction over the defendant and subject-matter jurisdiction over the claims. The only question that remains is whether CNH is due relief under the law.

For purposes of determining whether to enter a default judgment, the well-pleaded factual allegations of the complaint are accepted as true, except those relating to the amount of damages. *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). The complaint, however, must state a cause of action. *Id.* Thus, a plaintiff's conclusions of law are not deemed admitted, and the Court may grant only the relief for which a sufficient basis is asserted. *Id.*

CNH need only establish a *prima facie* liability case against SAI. *Id.* at 1357. Here, CNH has alleged sufficiently specific facts against SAI to state a cognizable breach of contract action. In particular, the complaint reflects that ACE and SAI entered into two Retail Installment Sales Contracts and Security Agreements, whereby ACE provided SAI with two wheel loaders, at the price of $147,764.91 for the first and $138,205.84 for the second. Doc. # 1 at 2-4. Immediately thereafter, ACE assigned its interest in the contracts to CNH. *Id.* Pursuant to a specified monthly payment plan, SAI made a number of payments on each contract, but ceased making monthly payments after 9/15/07. *Id.* at 5. In its claim for breach of contract, CNH stated that, as of 3/20/08, SAI was past due for an amount totaling $34,985.76. *Id.* In the compliant, CNH indicated that it had elected to accelerate the outstanding amounts due on each contract and, therefore, sought payment of the "total aggregate outstanding balance of principal and interest" on both contracts (as of 3/20/08) of $263,002.05, with interest accruing at a total of $51.24 (for both contracts) per diem. *Id.* at 5-6. The Court concludes that, pursuant to its complaint, CNH is due relief under the law.

By virtue of SAI's default, it "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted). As a result, SAI has admitted all of the well-pleaded facts in the complaint concerning liability.

The Court is thus left only with the determination of damages. However, as CNH seeks to hold SAI and Brown jointly and severally liable, the Court will defer its determination of the appropriate recovery against SAI until after reaching a decision on the summary judgment motions as to the claims by and against Brown.

**B. Motions for Summary Judgment**

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007).

The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response ... must set out specific facts showing a genuine issue for trial." F.R.Civ.P. 56(e)(2). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion. *See Earley v. Champion Int'l Corp.*, 907 F.2d 120, 123 (5th Cir. 1990). Unsworn statements, even from *pro se* parties, should not be "consider[ed] in determining the propriety of summary judgment." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).[5]

Although Brown responded to the summary judgment motions with her own list entitled "Facts for Defendants/Third Party Plaintiffs," doc. # 99, her response is of little or no value to the Court's analysis, as her assertions are unsworn, and she failed to provide any evidentiary support for the assertions.[6] The only evidentiary materials included with her response are documents (most of which are duplicates of documents that have previously been submitted to the Court) pertaining to the sale of the loaders, an affidavit by Brian Deal regarding signature issues with one of the contracts, and various documents pertaining to the ownership of SAI, which are irrelevant to the present litigation. Doc. ## 99-2 at 1-28; 99-3 at 1-55.

Nonetheless, the Court is aided in its assessment of the motions by the parties' recently-executed joint stipulations of fact.[7] *See* Rule 56(c) (permitting the court to consider any "admissions on file"); *see also Peery v. Serenity Behavioral Health Sys.*, 2009 WL 1228446, at *2 (S.D. Ga. 5/4/09) ("It is well-settled that stipulations of fact fairly entered into are controlling and conclusive, and courts are bound to enforce them.") (quoting *A. Duda & Sons Coop. Ass'n v. U.S.*, 504 F.2d 970, 975 (5th Cir. 1974)).

### 1. As to Brown's Counterclaims

CNH urges that it is entitled to summary judgment on Brown's counterclaim for fraud, doc. # 86, and both CNH and ACE urge that they are entitled to summary judgment on Brown's conspiracy counterclaim, *id.*; doc. # 84.

#### a. FRAUD

The Court first addresses CNH's motion for summary judgment, doc. # 86, as to Brown's fraud counterclaim, in which she alleged that CNH defrauded her by misrepresenting to her "that [CNH] had validly executed contracts with the correct payment terms," which she claims was a false statement that induced the purchase of the loaders and SAI's making of payments on them to CNH, doc. # 29 at 5-6. CNH urges that it is entitled to summary judgment because, *inter alia*, Brown has failed to make a *prima facie* showing of fraud by CNH, and, therefore, judgment as a matter of law should be entered. *Id.* at 16.

"The five elements essential to a tort suit for damages resulting from a material misrepresentation constituting fraud are: (1)

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to 10/1/81.

[6] Brown thus violated S.D.GA.LOC.R. 7.1(b) ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion.") by failing to cite to the record in her response.

[7] The Court declines to address whether the broader list of joint stipulations of fact (Attachments A-1 and/or A-2) should be considered despite Brown's later attempt to withdraw her assent to them. The Court instead will simply rely only on "Attachment A," the final (and more limited) set of stipulations, which provide ample support for the parties' motions.

5

that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647-48 (2006) (citations omitted). "As the moving party on a motion for summary judgment, a defendant may pierce the plaintiff's pleadings by demonstrating that there is no issue of material fact as to at least one essential element of the plaintiff's *prima facie* case." *Id.* at 648. Accordingly, to survive summary judgment on her fraud claim against CNH, Brown had to present some evidence of justifiable reliance on CNH's alleged misrepresentation, and she also had to show that she sustained some alleged loss and damage as a proximate result. She, however, has failed to do so.

Brown has alleged that CNH's statements induced the purchase of and making of payments on the two loaders. Both of those actions, however, were undertaken solely by SAI. Brown has not shown that she -- in her capacity as guarantor -- purchased the loaders or made any payments on the loaders in reliance upon CNH's alleged representations. Nor has she even alleged (much less provided evidence) that the statements induced any sort of reliance by her as guarantor.

Furthermore, Brown has not presented any evidence that she suffered any specific loss or damage (as guarantor) as a proximate result of CNH's alleged misrepresentation. "The question of proximate cause may be decided by the court as a matter of law in plain and indisputable cases." *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832 (citing *Thomas v. Food Lion*, 256 Ga. App. 880, 883 (2002)). Although she stated vaguely during her deposition that CNH's alleged misrepresentations hurt "[her] name personally," *see* doc. # 91 at 124 ("I'm trying to think how to answer that. [H]urting the name of the company and my name personally ... I guess that's what [the harm caused by CNH] is."), she fails to show how CNH's alleged misstatements were the proximate cause of any such (unsubstantiated) harm to her name. Thus, because Brown has not shown that she, as guarantor, relied on the representation in any way, nor that she was damaged in any way by the representations, counter-defendant CNH is entitled to summary judgment on Brown's fraud claim.

### b. CONSPIRACY

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *U.S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (1994). In this case, the conspiracy counterclaim was alleged against CNH and ACE in two separate filings. Doc. # 29 at 6 (counterclaim against CNH); doc. # 32 at 11 ("third party complaint" against ACE). The same general conspiracy language was used in both:

> ACE and CNH conspired and acted in concert together and with other persons and entities to defraud Defendant Brown and SAI in order to gain access to funds of SAI and Brown. As set forth with particularity in this Complaint, ACE and CNH engaged in numerous acts of fraud in furtherance of their conspiracy to wrongfully gain money and to defraud SAI and Brown. As an approximate [sic] result of the conspiracy of ACE and CNH to defraud SAI and Brown, SAI and Brown have been injured.

Doc. ## 29 at 6; 32 at 11. Each complaint featured different underlying acts of fraud allegedly committed by the relevant counter-defendant.

The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage. *Bell v. Sasser*, 238 Ga. App. 843, 852 (1999) (citing *Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah, Inc.*, 219 Ga. App. 296, 297 (1995)). Here, however, the Court has already disposed of all of the underlying fraud claims. First, on 6/18/09, the Court dismissed all of the fraud claims that Brown (and SAI) had alleged against then non-party ACE. Doc. # 68. The Court's dismissal was based on its determination that the fraud claims against ACE did not satisfy Rule 14's requirement that claims against third-parties be dependent on the outcome of the primary lawsuit. *Id.* at 2-4. Next, Brown's fraud claims against CNH were dismissed in the immediately preceding subsection (III.B.1.a) of this Order. As a result of the lack of any viable underlying fraud claim, Brown's claim that ACE and CNH conspired to defraud her cannot logically survive. *See Bell*, 238 Ga. App. at 852. The conspiracy claims against both ACE and CNH, therefore, must be dismissed.

### 2. As to CNH's Claims against Brown

In its complaint, CNH alleged that Brown is liable to it for breach of contract because she "defaulted in the terms of the guaranty" on the contracts when she and SAI failed to make payments beyond 9/15/07.[8] Doc. # 1 at 5. In her answer, however, Brown urges that the contracts should not be enforced (and, therefore, neither should her guaranty) because (a) ACE "defrauded [SAI and Brown] in the execution of any agreements"; (b) any agreement between the parties was rescinded on 10/24/07; and (c) any agreement between the parties was "the result of a mistaken fact and should not be enforced." Doc. # 9 at 1. Specifically, in her answer, Brown alleges that: (a) the contracts for both loaders contained incorrect information regarding the price term; (b) the vehicle model listed on the contract for Loader 1 was incorrect; (c) Brian Deal, a sales agent for ACE, misrepresented to Brown that the contract that he asked her to sign was simply a document confirming the delivery of the first loader; (d) Deal forged the signature of W.L. Salter (the initial guarantor) on both contracts; and (e) Brown's signature was forged on several versions of the contract for Loader 2. *Id.* at 3-5; doc. # 29 at 2-5. The Court will address each of these alleged hindrances to enforcement in turn.

First, no evidence has been presented by Brown (nor uncovered by the Court in its own review of the submitted evidence) tending to show that SAI was ever offered (much less that it and CNH or ACE agreed to) a lower total price than what is listed on each of the contracts. Although in her answer, Brown alleged specific total prices that she claims the parties agreed upon, doc. # 29 at 2-3, she has not submitted any evidence to support her contention that those claimed amounts were ultimately the total cost that SAI and Brown agreed to pay. For

---

[8] In its summary judgment motion, CNH notes that, since filing its complaint, it "has been able to peaceably secure the Collateral from SAI and [Brown]," and that, therefore, "any issues regarding CNH's entitlement to a Writ of Possession as to the Collateral, and [Brown's] counterclaims to declare void CNH's security interests in the Collateral, have been resolved." Doc. # 86-3 at 5 n.7.

7

instance, in her deposition she vaguely states that the prices were supposed to be "lower" than what the contracts' terms reflect, doc. # 91 at 92-93, but she does not provide any testimony or substantive evidence tending to show that the parties agreed to a specific lower total cost.[9] Moreover, Brown has stipulated to CNH's precise calculations of the total outstanding payment amounts on each loader, which are based upon the amounts stated on the contracts. Doc. # 80-2 at 9.

Next, the listing of the incorrect vehicle model on the contract for Loader 1, even if true, is of no effect on the enforceability of that contract. The contract listed the vehicle model for Loader 1 as "W130" when in fact it was "W130TC." Doc. # 29 at 2. Brown, however, has stipulated that Loader 1, as delivered by ACE (and accepted by SAI), was in fact a "Model W130TC," as the parties had agreed. Doc. # 80-2 at ¶ 1. It is thus clear that this minor and inadvertent deficiency in the loader's description has not rendered the contract unenforceable, as Brown cannot show that it defeated the parties' object in entering into the contract or that it materially affected their performance of it.

Next the Court addresses the contention that W.L. Salter's signatures on the initial contracts for each of the loaders were forged. First, any forgery issues regarding Salter's signature would only affect the validity of his guaranty, and not the validity of the underlying contract between CNH and SAI. *See D. Jack Davis Corp. v. E.I. Dupont de Nemours & Co.*, 174 Ga. App. 605, 605 (1985) ("Regardless of the validity of [a] guaranty, there is no law in Georgia that prohibits [a] creditor from seeking judgment against the primary debtor [on the primary obligation]."). Salter's signature was only relevant to the guaranty on the contracts; his signature was never used to reflect SAI's assent to the sale of the loaders and accompanying security agreements. Thus, the validity of Salter's signatures is of no consequence to the validity of the underlying agreement at issue here. Second, at the time that the breach at issue here occurred, Brown had replaced Salter as guarantor (and neither she nor SAI contest that she signed the amendment with the intent to commit herself as guarantor). Thus, the validity of Salter's signature is irrelevant here.

Finally, the Court addresses Brown's claim that Deal misrepresented to her the nature of the contract for Loader 1 when he asked her to sign it, and also Brown's claim that her signature was forged onto the contract for Loader 2.[10] Neither of these claims can survive summary judgment, however, because the evidence shows that SAI ratified the signature on both of the documents.

Generally, in Georgia, "[a] mere declaration that one did not sign a negotiable

---

[9] The Court notes that it appears that the potential cause of the dispute here is sales tax and incidental fees. *See* doc. # 93 at 104-07. The figures Brown claims were agreed upon for each loader ($137,500 for Loader 1 and $130,500 for Loader 2) correspond with the *subtotals* for each loader without sales tax and certain additional fees (e.g., costs of delivery and upgrades to the loaders). Deal testified that he never indicated to SAI or Brown that SAI would not have to pay sales tax in addition to the quoted price, and he stated that SAI requested the add-ons. *Id.* As discussed above, however, Brown has not presented any evidence tending to show that the parties agreed on *total* prices that were lower than what is set forth in the contracts.

[10] Additionally, in the parties' joint stipulations of fact, Brown stipulates that the signature of her name on each location on the contract for Loader 2 is in fact her own signature. Doc. # 80-2 at 7. To the extent that she may still maintain that "her own signature" was somehow forged or otherwise improperly placed on the document, her claim cannot survive, as she has presented no evidence tending to support it.

instrument does not create an issue of fact regarding its validity when one ratifies the signature, and thus the document, through his or her own actions." *Oakwood Acceptance Corp. v. Ahmad*, 271 Ga. App. 356, 357 (2005). In *Oakwood Acceptance*, the defendants defaulted on payments to Oakwood for a mobile home, in which Oakwood held a security interest. Oakwood petitioned for a writ of possession and moved for summary judgment. *Id.* In response, the defendants submitted affidavits in which they swore that they did not sign or initial the contract with Oakwood. *Id.* The court, however, emphasized the fact that the defendants had been given a copy of the contract at their request, moved into the mobile home, made payments on the mobile home for three months, and continued to live in the mobile home without making payments for some time thereafter. *Id.* As a result, the court concluded that, "even if we assume that the signatures and initials on the contract here are forged or otherwise unauthorized, the undisputed evidence reveals that the [defendants] ratified their signatures and the terms of the agreement. Thus their forgery defense fails as a matter of law." *Id.* (citations omitted).

Here, it is amply clear that SAI ratified both of the contracts. First and foremost, SAI accepted the benefits of the contracts. It accepted the delivery of the loaders, doc. # 80-2 at 1-2, 5 (¶¶ 3, 4, 22, 23), and procured insurance coverage over them, doc. # 91 at 118 (Brown depo.). SAI demonstrated that it understood (and intended to abide by) the major terms of the contracts by making eleven monthly payments on Loader 1, and eight payments on Loader 2 (before entering into default). Doc. # 80-2 at 3, 7 (¶¶ 17-18, 34-35). SAI made three requests for alterations to the contracts' payment schedules, further demonstrating that SAI considered itself bound by the contract. *Id.* at 8 (¶¶ 43-48).

Moreover, SAI expressly ratified the two contracts by executing an amendment to each one, replacing Salter with Brown as guarantor. *Id.* at 7 (¶¶ 37-42). Brown has stipulated that "[t]he parties intended for [the documents entitled 'Amendment to Retail Contract Agreement'] to amend Contract[s] 1 [and 2] to relieve W.L. Salter from all obligations related to [both] Contract[s] and to impose liability upon Brown and SAI for all amounts arising pursuant to [both] Contract[s]." *Id.* at 7-8 (¶¶ 41-42). Brown signed both amendments twice -- once on behalf of SAI and, additionally, in her individual capacity as guarantor. *See* doc. # 86-4 at 11-12 (copies of the amendments).

Based on the foregoing evidence, it is clear that, even assuming there were issues with Brown's signature during the initial execution of the contracts, SAI thereafter ratified the contracts. As a result, Brown cannot succeed on her defenses that the contracts are unenforceable. The Court will therefore proceed with addressing CNH's breach of contracts claims.

Brown has stipulated to the remaining elements necessary to the success of CNH's claim that she breached the terms of the guaranty. She is thus bound to her concessions that: (a) SAI purchased and accepted delivery of the loaders, doc. # 80-2 at 2, 5 (¶¶ 1, 3, 4, 20, 22, 23); (b) she (Brown) executed the amendment to each contract with the intent to commit herself as guarantor on the contracts, and to, therefore, "impose liability upon [herself] ... for all amounts arising pursuant to [the contracts]," *id.* at 7-8 (¶¶ 41-42); (c) SAI stopped making payments on both loaders on 9/15/07, *id.* at 5,7 (¶¶ 19, 36), after making payments totaling $32,281.15 on the contract for Loader 1, and $19,400.70 on the

9

contract for Loader 2, *id.* at 4, 7 (¶¶ 17, 34); and (d) as of 8/17/09, the outstanding balances on the contract for Loader 1 and the contract for Loader 2 are $142,897.05 and $152,699.14, respectively, *id.* at 9 (¶¶ 51, 52), with a combined interest of $51.24 per day continuing to accrue, *id.* at 9 (¶¶ 53, 54). *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2722 at 376-77 ("Rule 56(c) also permits the court to consider any 'admissions on file[,]' ... [which] may have emerged at the pretrial conference ... or have their roots in a joint statement or stipulation by counsel."). Both contracts having been found enforceable, and Brown having admitted all of the facts necessary to a finding of SAI's breach and her own breach as guarantor, CNH is entitled to summary judgment on its breach of contract claim against Brown.

### 3. As to CNH's Claims against ACE

CNH and ACE each separately urge their own entitlement to summary judgment on CNH's claims against ACE for breach of the assignment agreement warranties and for indemnification. Doc. ## 37 (CNH's complaint against ACE), 81 (ACE's summary judgment motion), 86-3 (CNH's summary judgment motion). CNH claims that, pursuant to the terms of the assignment agreements, "once [SAI and Brown made] a claim against CNH alleging facts that 'could' constitute a breach of any of the warranties, [ACE was] required to repurchase the contracts from CNH, [and,] additionally, [ACE] is required to assume the defense of the claim, and hold CNH harmless from all losses, costs and expenses arising therefrom." Doc. # 86-3 at 20. ACE, however, has pointed out that (a) the repurchase clause requires that CNH first make a demand upon ACE for repurchase, and as CNH has not even alleged that it made such a demand, ACE is not presently obligated to repurchase; and (b) the vague provision requiring ACE to repurchase the contract if defendant makes allegations that "*could*" constitute a breach of any warranties should not be construed to require repurchase here, where the Court has rejected defendants' allegations. Doc. # 101 at 2-6. The Court finds merit in both of ACE's arguments, especially in light of the fact that all of defendants' defenses and counterclaims have been rejected. As a result, summary judgment is granted against CNH and in favor of ACE as to all of CNH's claims against ACE, doc. # 37.

### C. Damages and Attorney's Fees

The Court has entered a default judgment against SAI, *supra* section III.A, and summary judgment against Brown, *supra* sections III.B.1 & III.B.2, establishing liability against both parties. The Court must now address the issue of damages. CNH has requested that the Court enter judgment against SAI and Brown in the amount of "$295,596.19, as of August 17, 2009, plus interest accruing thereafter at a rate of $51,24 per diem," and for costs and attorney's fees pursuant to O.C.G.A. § 13-1-11. Doc. # 98

### 1. Damages

The liability of the individual defendants has been established by the entry of the default judgment (against SAI) and summary judgment (against Brown). Damages are easily awarded in this case, since they are for a sum certain (based on the acceleration of outstanding payments due and the interest rate provided in the contracts) and since CNH has presented evidence supporting the amount it seeks. In particular, CNH has supplied copies of the contracts for both of the loaders, which include the price terms, the accelerated rent provision, and the basic structure of the

monthly payment plan on each loader. *See* doc. # 1 at 10, 12, 16, 18. Moreover, not only have neither of the defendants come forward (at any point in this litigation) with any evidence challenging CNH's damages figure, but Brown has stipulated to CNH's calculation of the total outstanding balance amounts (as of 8/17/09) for each contract, as well as the specific amount of interest that continues to accrue on each contract every day. Doc. # 80-2 at 9 (¶¶ 51-54). As a result, no evidentiary hearing is necessary here, and the Court hereby orders that judgment be entered against defendants Southeastern Aggregate, Inc. and Cleone Brown, jointly and severally, in the amount of $297,901.99, with interest continuing to accrue following the entry of this Order at a rate of $51.24 per diem.[11]

CNH has informed the Court that following the parties' 5/22/09 status conference, it was able to secure possession of the loaders from SAI and Brown "in accordance with the terms of the Contracts and applicable law." Doc. # 86-3 at 5 n.7. As a result, CNH now has a duty to proceed in a commercially reasonable manner with respect to the property. *See Okefenokee Aircraft, Inc. v. PrimeSouth Bank*, 296 Ga. App. 782, 785 (2009) ("Once a creditor has possession [of the asset] he must act in a commercially reasonable manner toward sale, lease ... or other disposition.") Thus, CNH should apply all net proceeds from any sale (or other disposition) of the loaders to the total amount owed by SAI and Brown.

### 2. Attorney's Fees

CNH included in its complaint a claim for attorney's fees pursuant to O.C.G.A. § 13-1-11, upon which it presently moves for summary judgment. Doc. # 1 at 7. In Paragraph 9 of the "Additional Provisions" section of the loader contracts, SAI and Brown agreed to reimburse CNH for reasonable attorney's fees and costs incurred in seeking to collect the amounts due under the contracts. *See* doc. # 86-4 at 3-4 ("Additional Provisions" section). Neither SAI nor Brown has submitted any evidence challenging CNH's claim of entitlement under the statute and Paragraph 9.

Pursuant to O.C.G.A. § 13-1-11, where, as here, a contract provides for the payment of "reasonable" attorney's fees without designating any specific percent, the provision is construed to mean fifteen percent of the first $500.00 of principal and interest owing on the note and ten percent of the amount of principal and interest remaining in excess of that $500.00. O.C.G.A. § 13-1-11(a)(2).

As a precondition to an attorney's fees award, § 13-1-11 requires the party seeking fees to issue a demand notice, which must: (1) be in writing; (2) to the party sought to be held on the obligation; (3) after maturity; (4) state that the provisions relative to payment of attorney fees in addition to principal and interest will be enforced; and (5) state that the party has ten days from the receipt of such notice to pay the principal and interest without the attorney fees. *Trust Assocs. v. Snead*, 253 Ga. App. 475, 476 (2002). Having complied with this requirement by way of its complaint, CNH has fulfilled all of its obligations, and attorney's fees are awarded, pursuant to the statute, in the amount of $29,815.20.[12]

---

[11] In its Motion for Default Judgment and its Motion for Summary Judgment, CNH states that, as of 8/17/09, the total amount due under the two contracts (including past due and accelerated rental amounts and accrued interest) was $295,596.19. Doc. # 86-2 at 11-12; doc. # 98 at 4. The Court has calculated the total interest that has accrued over the 45 days that have passed since 8/17/09 ($51.24 x 45 = $2,305.80) and has added this to the total amount due on 8/17/09 ($295,596.19 + $2,305.80) to reach the total amount due listed above.

[12] The Court arrived at this figure as follows: Fifteen percent of the first $500 equals $75. The remaining

11

## III. CONCLUSION

For the foregoing reasons, CNH's motion for entry of default judgment against SAI is *GRANTED*. Doc. # 98. CNH's motion for summary judgment is *GRANTED* in part and *DENIED* in part; its motion for summary judgment against Brown, as to both its own claims against Brown and Brown's counterclaims against it, is *GRANTED*, while its motion for summary judgment as to its cross-claims against ACE is *DENIED*. Doc. #86. ACE's motion for summary judgment as to CNH's claims against it, as well as ACE's motion for summary judgment as to Brown's conspiracy counterclaim against it, are *GRANTED*. Doc. ## 81, 84. Accordingly, judgment is entered against SAI and Brown, jointly and severally, in the amount of **$327,717.19**, which represents the sum total of $297,901.99 in damages (the principal and interest on the loaders) and $29,815.20 in attorney's fees.

Additionally, CNH and ACE's joint motion to modify pretrial order, doc. # 75, and conference directive, as well as their individual motions in limine, doc. ## 95, 96, are *DENIED AS MOOT*.

This day of 1 October 2009.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

principal and interest (after subtracting $500) equals $297,401.99. Ten percent of the remaining principal and interest equals $29,740.20. Thus, the § 13-1-11 attorney's fees award totals $29,815.20.